IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-02736-RBJ-KMT

H. L. HERBERT,

    Plaintiff,

v.

SERGEANT MICHELLE RUFFINI, individually and in her official capacity,
CAPTAIN CORY BURKET, individually and in his official capacity, and
MAJOR BOB BUCHOLZ, individually and in his official capacity,

    Defendants.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case involves a First Amendment challenge by inmate H.L. Hebert to censorship of certain pieces of mail he was sent at Arkansas Valley Correctional Facility ("AVCF"). Before the Court is defendants' motion for summary judgment. ECF No. 52. For the reasons discussed below, the Court GRANTS the motion.

### I. BACKGROUND

The facts of this case have already been laid out in detail in Magistrate Judge Tafoya's recommendation on defendants' motion to dismiss, ECF No. 35, and my order adopting in part and rejecting in part her recommendation, ECF No. 39. As a result, I merely summarize the background and bring in additional facts as needed to rule on summary judgment.

Plaintiff H.L. Hebert is an inmate incarcerated by the Colorado Department of

Corrections ("CDOC") at the AVCF. Defendants Ruffini, Burket, and Bucholz were all employed at the facility at the time Mr. Hebert allegedly had his mail unconstitutionally censored, and they were all involved in the censorship. On July 20, 2018, Mr. Hebert received a "Notice of Rejection/Disposition of Mail" stating that Sergeant Ruffini had intercepted two envelopes mailed to plaintiff and had forwarded them to an intelligence lieutenant. ECF No. 7 at 4. Mr. Hebert filed an administrative grievance in response. *Id.*; ECF No. 52-1. On August 3, 2018 Mr. Herbert received a second "Notice of Rejection/Disposition of Mail" referencing the same two envelopes and informing Mr. Hebert that they "contain[ed] numerous accusations about another CDOC offender." ECF Nos. 7 at 4; 52-2. On August 21, 2018 Mr. Hebert received a "Facility Publication Committee Personal Letter/Photo Censorship Decision," which contained a decision made by Captain Burket and approved by Major Bucholz. It stated that the envelopes had been rejected because they contained "case trials posing a threat to the safety of offenders by making accusations of alleged illegal activity." ECF Nos. 7 at 4; 52-3.

Plaintiff filed a pro se complaint in this Court on November 15, 2018 based on this interference with his mail. He asserted two claims against defendants in their official and individual capacities: (1) that defendants violated his First Amendment rights by denying him access to his mail; and (2) that defendants denied him procedural due process by denying him notice and meaningful opportunity for review on appeal of their decision to withhold his mail. ECF No. 7 at 4–6. Plaintiff sought injunctive relief and nominal and punitive damages. I dismissed plaintiff's due process claim in its entirety on February 18, 2020. I also dismissed plaintiff's claim for nominal and punitive damages related to his First Amendment allegations. However, I permitted his claim for injunctive relief under the First Amendment to go forward

2

because I found that Mr. Hebert had raised a valid objection to defendants' assertion of a legitimate penological purpose justifying their censorship decision. At the time, defendants had not produced the withheld mail to Mr. Hebert or the Court. There was no way for me to assess whether the documents were in fact public records, whose withholding was unlikely to be related to a legitimate penological purpose, or something else.0

Defendants have since produced the withheld mail to the Court under restriction. ECF No. 53. The two envelopes contained a total of four documents. Two are prose pieces, essentially articles, that suggest a man other than Mr. Hebert killed Mr. Hebert's wife. *Id.* at 3–6, 27–29. It appears that the first of them was published on Westword. A third document is a letter to Mr. Hebert regarding juror addresses that the sender evidently located on Mr. Hebert's behalf. ECF No. 53-1. Attached to it are two pages of names and addresses of various people, presumably jurors. The fourth document is an opinion in plaintiff's criminal case issued by the Supreme Court of Colorado (*People v. Hebert*, 46 P.3d 473 (Colo. 2002)). ECF No. 53 at 7–26. The first page of the articles and the judicial opinion have a thick lined box with the words "Trial of Hal Hebert" inside, and all three documents have a "Confidential" watermark on each page.

In conjunction with producing the withheld mail, defendants moved for summary judgment on July 10, 2020. ECF No. 52. Plaintiff responded on August 26, 2020. ECF No. 59. Defendants replied on October 9, 2020. ECF No. 62.

## II. STANDARD OF REVIEW

### A. Motion for summary judgment

A court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The

moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment. *See Concrete Works of Colo., Inc. v. City and Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### B. Pro se litigants

Mr. Hebert is proceeding pro se. When a case involves pro se litigants, courts will review their "pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). Nevertheless, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A "broad reading" of a pro se plaintiff's pleadings "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* In addition, pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks and citations omitted).

### III. ANALYSIS

"Prison walls do not form a barrier separating prison inmates from the protections of the

4

Constitution." *Turner v. Safley*, 482 U.S. 78, 89 (1987). However, the First Amendment right of inmates to receive correspondence is "qualified of necessity by the circumstance of imprisonment." *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). In *Turner* the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. It laid out four factors for determining if a regulation is reasonably related to legitimate penological interest: (1) whether there is a valid, rational connection between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means by which the inmate can exercise the right; (3) whether accommodation of the asserted right will have a significant "ripple effect" on fellow inmates or prison staff; and (4) whether there is a ready alternative to regulation that fully accommodates the prisoner's right at *de minimis* cost to the valid penological interest. *Id.* at 89–91.

The burden is on the prisoner to disprove the validity of prison regulations. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). The Tenth Circuit has said that the first of the *Turner* factors is the most important, because "it is 'not simply a consideration to be weighed but rather an essential requirement.'" *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (quoting *Boles v. Neet*, 486 F.3d 1177, 1181 (10th Cir. 2007)). *Turner* "requires courts, on a case-by-case basis, to look closely at the facts of a particular case and the specific regulations and interests of the prison system in determining whether prisoner's constitutional rights may be curtailed." *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002). Although the Tenth Circuit has recognized "(1) the difficulty of running a prison, (2) the separation of powers concerns when a

5

federal court assumes a function (prison administration) entrusted to the legislative and executive branches, and (3) the need for federal courts to accord deference to state prison authorities," it has also noted that "those factors do not mean that every prison regulation is insulated from review no matter what the facts may be." *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004) (internal citation omitted).

The sole question before the Court at the summary judgment stage is whether there is a genuine dispute of material fact as to plaintiff's claim. To survive summary judgment Mr. Hebert must show that there are genuine disputes of fact as to each of the *Turner* factors (or that there are genuine disputes as to some and that the others have been proven in his favor). In denying defendants' motion to dismiss as to Mr. Hebert's First Amendment claim, I allowed for the possibility that the withheld documents were official court records, legal opinions, or some other type of public record. Having actually reviewed the documents, one of them indeed is a public record—the Supreme Court of Colorado decision in Mr. Hebert's criminal case from May 20, 2002. The other three documents, however, are not.

The first *Turner* factor, whether the regulation is rationally related to a legitimate penological interest, is the most important one. *Al-Owhali*, 687 F.3d at 1240. That factor is also the core question in this case. Defendants argue that the withholding of Mr. Hebert's mail was unquestionably related to the legitimate penological interest of facility security. ECF No. 52 at 9–10. They note that the censored materials accuse another prisoner incarcerated by the Department of the homicide for which Mr. Hebert was convicted. According to defendants, these allegations could be "disruptive" to the correctional environment by creating conflict and leading to violent incidents among inmates. *Id.* Major Bucholz stated in his affidavit that

6

information of the type included in the two articles could also be sold, traded, or bartered to coerce inmates into conduct they would not normally undertake. ECF No. 52-6 at ¶12–13.

I agree with defendants as to three of the four documents. Safety and security of inmates and facility staff is certainly a legitimate penological interest. *E.g.*, *Turner*, 482 U.S. at 89 (upholding regulation restricting mail between inmates at different institutions for prison safety and security reasons); *Jones v. Salt Lake Cty.*, 503 F.3d 1147, 1154–59 (10th Cir. 2007) (upholding bans on sexually explicit materials and paperbacks not sent directly from publisher based on jail staff and inmate safety and preventing introduction of contraband); *Wardell v. Duncan*, 470 F.3d 954, 960 (10th Cir. 2006) (upholding ban on gift publications because the policy aimed to prevent extortion, bartering, contraband, smuggling, and inmates' manipulating or defrauding the public). The two articles in which another inmate is accused of murdering plaintiff's late wife, and the juror address letter, have the potential to cause strife and unrest within the prison. They are thus rationally related to this interest.

In response to defendants' argument that the articles detail criminal conduct that could be disruptive to the prison, Mr. Hebert notes that inmates have access to daily newspapers and legal documents that equally detail such conduct. ECF No. 59 at 9–10. His argument, however, does not address the particular risk posed by the two articles here. These articles attempt the undermine the validity of Mr. Hebert's conviction for murder by launching unproven accusations for that crime against another inmate currently incarcerated by the Department. Since that other individual is a well-known convicted serial killer, inmates within Mr. Hebert's facility are likely to know him or know of him and to react to the accusations, even if he is not in Mr. Hebert's same facility. It thus stands to reason that the articles could pose a greater facility security risk

than standard criminal reporting in daily newspapers or legal documents.

Even if Mr. Hebert himself does not pose a risk to other inmates due to his age and infirmity, as he suggests, he may be targeted by others who are affiliated with the purported "true" killer or who seek to antagonize Mr. Hebert based on the articles' allegations. *Id.* at 11, 15. A risk to his own safety is equally important to consider as a risk to other persons. Furthermore, the letter discussing juror contact information and containing actual juror addresses is similarly related to this legitimate penological interest. Inmates might barter or trade the contact information of the individual who collected the juror addresses if they believe he might prove useful to other individuals seeking to prove their innocence. Mr. Hebert himself or others may also send improper messages to jurors on the list, potentially exposing the prison to allegations of facilitating harassment.

The second *Turner* factor asks whether there are alternative means by which Mr. Hebert can exercise his right—in this case, access the censored correspondence. Plaintiff claims there are not to the extent that the documents are published only online, because he cannot freely browse the Internet. I find this to be partially true. The Supreme Court of Colorado decision from Mr. Hebert's criminal appeal is surely available to him through the law library (assuming he does not have a copy already). As for the other three documents, there does not appear to be any other way for him to access them directly—even the Westword article might not be accessible if a paper copy of that publication is not accessible in the prison. However, if these documents relate to an inquiry into his case referred by the Denver District Attorney to the CU Boulder Innocence Project, as he claims, Mr. Hebert can request that the mailer send them directly to that group. *Id.* at 10. Potentially he would then be able to access them indirectly

through his legal team if that case moves forward.

Under the third *Turner* factor courts consider whether the restriction serves the best interests and safety of the prison population and staff. The analysis here looks similar to that under the first factor. Defendants' explanation of the legitimate penological reason for withholding plaintiff's documents suggests that the censorship avoided safety and security risks that could have been caused by their release. Permitting plaintiff to have these documents would likely cause a "ripple effect" by generating conversations and possibly conflict or violence among inmates, as well as jockeying for juror contact information. Mr. Hebert's arguments as to why no conflict would arise, discussed above, are insufficiently persuasive to create a dispute under this factor.

Finally, the fourth factor from *Turner* is whether an alternative restriction exists that would accommodate Mr. Hebert's First Amendment rights at only *de minimus* cost to AVCF. Mr. Hebert has not suggested an alternative, nor is the Court aware of one. The regulation as it stands is fairly specific, requiring case-by-case determinations on whether mail of this type will be censored or not. *Id.* at 21–38 [Admin. Reg. 300-26 on "Publications"]. One could conceivably imagine that mail room staff could redact the portions of a publication that create a safety risk in lieu of withholding it outright, but this would be time and resource-intensive—not a *de minimus* cost.

There is one caveat to this fourth factor, however. As mentioned above, one of the documents included in the two mailings was a public judicial decision in Mr. Hebert's own criminal case. I cannot conceive of a justification for censoring this document, nor have defendants offered one. In fact, defendants seem to have missed it altogether—their motion

9

references ECF No. 53 but erroneously states that the censored materials are not "public records, official court records, or, legal opinions." ECF No. 52 at 10. Major Bucholz' affidavit makes the same statement. ECF No. 52-6 at ¶¶9–10. While there is no alternative with *de minimus* cost to the approach defendants took in censoring plaintiff's mail generally, it is not clear why defendants withheld *all* the documents instead of assessing them one-by-one and releasing the judicial opinion to Mr. Hebert. Making censorship decisions document-by-document instead of by entire mail packet would not be significantly more costly or burdensome to the prison, as mail room staff are presumably required to look through all non-privileged non-legal mail regardless (not just, for example, the first page in a packet). Furthermore, the Department of Corrections' own policies contemplate this approach. *See* ECF No. 59 at 21–38 [Admin Reg. 300-26 on "Publications"] (outlining rules on a publication-by-publication basis); *Id.* at 47 [Admin. Reg. 300-38 on "Offender Mail"] ("Offenders are notified when incoming or outgoing letters are withheld *in part or in full* . . . .") (emphasis added).

None of defendants' filings recognizes the existence of this judicial decision among Mr. Hebert's censored mail. The administrative documents, motion for summary judgment, and reply focus entirely on the safety and security risk posed by the articles and the juror list. Furthermore, the judicial decision has the same "Trial of Hal Hebert" and "Confidential" labels as the two articles, which may have obscured its identity as a public record when viewed among them. Based on these facts, and without other evidence to the contrary, the Court assumes that censorship of this judicial decision was inadvertent, not purposeful. On its own it thus does not rise to the level of a constitutional violation. *See Jones*, 503 F.3d at 1161–63 (rejecting First Amendment claim based on rejection of bulk rate mail packages because it was defendants'

negligence, not regulations, that caused harm).  The Court nonetheless respectfully suggests to defendants that they abide by their own policies and censor mail on a document-by-document basis going forward.  While AVCF's goal of ensuring facility security is undoubtedly important, it must be balanced against inmates' First Amendment right to correspondence.  The judicial opinion, which is a public record, should not have been withheld from Mr. Hebert.

Defendants' mistake in withholding the court document does not save plaintiff's claim, however.  There is no genuine dispute as to whether defendants' actions regarding plaintiff's mail were rationally related to a legitimate penological interest overall.  They were.  The other *Turner* factors also indicate that the mail censorship regulation as applied to Mr. Hebert was reasonable.  Plaintiff has not carried his burden of proving that the restriction here is invalid.  The Court therefore grants summary judgment to defendants on Mr. Hebert's remaining claim.

## ORDER

Defendants' motion for summary judgment [ECF No. 52] is GRANTED.  As the prevailing party, defendants are awarded their reasonable costs to be taxed by the Clerk pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 12th day of March, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge